UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES BLISS,

                 Plaintiff,

v.                                             Case No.  5:05-cv-481-Oc-10GRJ

LINDA S. McMAHON[1],  Acting Commissioner
of Social Security,

                 Defendant.

_____

## REPORT AND RECOMMENDATION[2]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 4) and both parties have filed briefs outlining their respective positions. (Docs. 7 &11.) For the reasons discussed below the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income ("SSI") on January 4, 1995 with a protective filing date of November 2,

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

1994.  Plaintiff's claim was denied initially (R. 222-224, 225-226) and upon

reconsideration. (R. 229-230, 231-232.)  Plaintiff filed a request for a hearing and a

hearing was held before Administrative Law Judge Ruben Figueroa on October 16,

1996. (R. 40-56.) On November 22, 1996 Administrative Law Judge Ruben Figueroa

issued a decision unfavorable to Plaintiff. (R. 16-31.) Plaintiff's request for review of that

decision was denied by the Appeals Council on August 28, 1998, rendering the

Administrative Law Judge Ruben Figueroa's decision the final decision of the

Commissioner. (R. 6-7.) Plaintiff filed a complaint in the Middle District of Florida under

civil case number 5:98-cv-296-J-Oc-HTS. The Court remanded the case to the

Commissioner for further consideration of Plaintiff's mental impairment. (R. 520-535.)

After the case was remanded a supplemental hearing was held before

Administrative Law Judge Ruben Figueroa on November 2, 2001. (R. 587-613.)

Administrative Law Judge Ruben Figueroa entered a partially favorable decision to

Plaintiff, determining that Plaintiff was entitled to SSI commencing November 7, 1996

but not prior to that date. (R. 542-560.) Plaintiff sought review with the Appeals Council,

which affirmed the ALJ's finding that Plaintiff was disabled commencing November 7,

1996, but remanded the case to the Administrative Law Judge on November 4, 2004 for

further development of the record and for issuance of a new decision with regard to the

period before November 7, 1996. (R. 569-71.)

A supplemental hearing was held on June 7, 2005. (R. 616-628.) Administrative

Law Judge R. Neil Lewis (the "ALJ") issued an unfavorable decision to Plaintiff on

August 9, 2005 finding that Plaintiff was capable of performing past relevant work and

was therefore not disabled from July 21, 1994 to November 6, 1996. (R. 501-510.)

Plaintiff did not challenge the ALJ's decision with the Appeals Council and instead, Plaintiff filed the instant appeal to this Court of the Commissioner's final decision. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision

---

[3] <u>See </u>42 U.S.C. § 405(g).

[4] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); <em>accord,</em> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] <u>Foote</u>, 67 F.3d at 1560; <em>accord,</em> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

[12] 20 C.F.R. § 404.1520(c).

disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the Grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[17] Doughty, 245 F.3d at 1278 n.2.  In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[18] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III. SUMMARY OF THE RECORD

### A. Personal Background

Plaintiff, who had completed the ninth grade, was born in 1949 and was between the ages of 45 to 47 during the time period considered by the ALJ. (R. 505, 616-17.) Plaintiff last worked as a clerk in a liquor store until the store closed. (R. 618-619.) Since then, Plaintiff testified that he was unable to find another job because of his leg braces and not getting along well with other people. (R. 619-621.) Plaintiff also testified that the longest job he ever held was as a driver for a friend of the family. (R. 622-623.)

---

[19] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996).  See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[20] Walker, 826 F.2d at 1003.

[21] Wolfe, 86 F.3d at 1077-78.

[22] See id.

6

Additionally, from 1966-1970, Plaintiff served in the military and at some point served in Vietnam. (R. 622.) Plaintiff testified that when he returned from Vietnam, he was put in the stockade and received numerous citations for bad behavior. Id. Plaintiff was unsuitably discharged from the military for a character behavior disorder. Id.

## B. Medical History

Plaintiff alleges that he became disabled due to severe impairments of his back, feet, legs, knees, ankles and due to Post Traumatic Stress Disorder ("PTSD"). (R. 60, 162.) The only issue raised in this appeal concerns the ALJ's determination with regard to Plaintiff's mental impairment, the PTSD. The Court will, therefore, focus the discussion of the record upon the evidence pertaining to Plaintiff's PTSD.

The record only provides limited documentation of Plaintiff's PTSD. Medical records form the Veterans Administration Medical Center ("VA") dated February 15, 1989, disclose that Plaintiff was provisionally diagnosed with PTSD. (R. 338-340.) Another VA consultation record from June 26, 1990 suggests that at some point Plaintiff was diagnosed with PTSD. (R. 308.)

On September 18, 1991, Dr. Rodney A. Poetter, Ph.D., a licensed clinical psychologist, administered a clinical interview and mental status examination on Plaintiff. (R. 362.)  Plaintiff told Dr. Poetter that he was usually in a good mood "if no one pisses me off" and "if I stay away from people." (R. 364.) Dr. Poetter noted that Plaintiff was able to express himself appropriately. (R. 363.) Dr. Poetter ultimately reported that there was no evidence of psychosis or major affective disorder or any other severe cognitive deficits. However, Dr. Poetter did diagnose Plaintiff with PTSD and mixed substance abuse in remission. (R. 364.)

7

In an October 11, 1993 letter to the Office of Disability Determinations, Dr. Allen Hodges, PhD., a clinical psychologist, also diagnosed Plaintiff with PTSD, as well as passive aggressive personality disorder and polysubstance dependence in remission. (R. 366.) Plaintiff told Dr. Hodges that he is a loner and avoids people, has nightmares and suffers from flashbacks. Id. Plaintiff also stated to Dr. Hodges that he "did bad shit in Viet Name [sic] and now I'm suffering from it." Id. Dr. P. Raju, M.D. also documented that Plaintiff had a history of PTSD in a letter to the State of Florida Department of Labor and Employment Security dated October 13, 1993. (R. 368-369.)

A March 11, 1994 letter from Dr. Brooks Henderson, M.D. of the Department of Veteran Affairs disclosed that he treated Plaintiff at the VA Mental Health Clinic since February 15, 1989. (R. 381.) Dr. Henderson stated that he diagnosed Plaintiff with PTSD and there was little improvement. Id. Dr. Henderson reported a long history of Plaintiff impulsively quitting jobs and opined that Plaintiff would not likely be offered employment because of this employment history and his noticeable irritability. Id. Dr. Henderson also noted that Plaintiff relates poorly to peers and coworkers, and is often preoccupied and oblivious to his surroundings. Id.

On March 8, 1995, Dr. David M. Bortnick, PhD., PsyD., a clinical and neuropsychologist, examined Plaintiff. (R. 468.) Dr. Bortnick observed that Plaintiff was friendly, cooperative, alert and oriented in all spheres. (R. 469.) Additionally, Dr. Bortnick reported no signs of anxiety, depression, pain, hallucinations, delusions, psychotic processes or cognitive impairments. Id. Also, Dr. Bortnick noted that Plaintiff seemed to pay attention and concentrate without difficulty. Id. Dr. Bortnick diagnosed Plaintiff with personality disorder and nicotine dependence. (R. 470.) Furthermore, Dr.

Borntick found that Plaintiff could perform work-related activities with no psychological restrictions, and that working would be therapeutic for Plaintiff. Id. Dr. Bortnick also recommended Vocational Rehabilitation. Id.

In September of 1995, a State Agency psychologist reported Plaintiff's impairments as an anxiety-related disorder and a personality disorder stemming from PTSD. (R. 258, 262.) The psychologist found those impairments not severe. Id. Specifically, the psychologist reported that Plaintiff was only slightly functionally limited by those mental impairments. (R. 265.)

Plaintiff completed a questionnaire on September 25, 1996 disclosing that he took five different medications, including two for his nerves, prescribed by Dr. Henderson. (R. 484.) Dr. Henderson completed an assessment on October 31, 2001, determining Plaintiff's capacity to perform certain tasks and functions in a work environment of 8 hours a day, 5 days a week. (R. 539.) Dr. Henderson rated Plaintiff's restrictions based on a scale from mild to moderate to marked to extreme - extreme being the worst rating. Id. In summary, Dr. Henderson rated Plaintiff moderate to marked on his ability to understand and remember locations and instructions. Id. Dr. Henderson also rated Plaintiff moderate to marked in his ability to sustain concentration and persistence in carrying out instructions. Id. Plaintiff received a rating of marked to extreme in his ability to sustain ordinary routine without special supervision, coordinate with others without being distracted and make simple work-related decisions. (R. 539-540.) In his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without unreasonable rest periods, Plaintiff was rated extreme. (R. 540.) Plaintiff was rated

marked to extreme in his ability to socially interact with people. Lastly, in his ability to

adapt to changes, his awareness of normal hazards and ability to set realistic goals,

Plaintiff was rated moderate to marked.

## C.  ALJ's Decision

The ALJ's August 9, 2005 decision was unfavorable to Plaintiff. (R. 501.) The

ALJ found that Plaintiff's personality disorder or anxiety-related disorder was "not

severe." (R. 507.) The ALJ made this finding based upon the substantial evidence in the

record which demonstrated that Plaintiff's mental disorders were mild and placed no

limitations on his activities of daily living nor social functioning. (R. 506-07.)

Furthermore, the disorders did not cause any deficiencies of concentration, persistence

or pace and did not cause any episodes of decompensation. (R. 506.) However, the

ALJ did find that the combination of Plaintiff''s flat feet, ankle instability and

degenerative disc disease were "severe" within the meaning of the Regulations. (R.

507.)

In concluding that Plaintiff's mental disorders were mild and that there was no

evidence of any limitations on Plaintiff's activities of daily living attributable to a mental

impairment, the ALJ relied upon, among other evidence, the examination of Plaintiff by

Dr. Bortnick. (R. 506.) Dr. Bortnick noted that Plaintiffs abilities, interests and adaptive

skills were normal and that he was not psychologically disabled. Dr. Bortnick specifically

found that working would be therapeutic for Plaintiff and recommended Vocational

Rehabilitation. Id.

The ALJ also relied on the State Agency psychologists' finding that Plaintiff was

not disabled due to his mental impairments, particularly noting that the psychologist

reported only slight restrictions in activities of daily living, social functioning, concentration and persistence, as well as no episodes of decompensation in work-like settings. Id.

The ALJ reviewed the form that Plaintiff's treating physician, Dr. Henderson, filled out regarding Plaintiff's functional limitations. (R. 506-07.) The ALJ noted that Dr. Henderson completed the form almost 5 years after the period of time at issue. (R. 506.) Additionally, the ALJ found it significant that Dr. Henderson only examined the claimant on two occasions. Id. The ALJ concluded that Dr. Henderson's evaluations were inconsistent with the clinical findings and with Plaintiff's own self-reported activities at the period at issue. (R. 507.) Thus, the ALJ gave minimal weight to Dr. Henderson's assessment. Id.

The ALJ went on to conclude that Plaintiff was capable of performing his past relevant work as a liquor clerk. (R. 508) The ALJ additionally, concluded that even if the Plaintiff could perform his past relevant work he would still be considered not disabled according to the Medical Vocational Guidelines, Rules 202.18-202.19 and 202.19-202.20. Id.

## IV.  DISCUSSION

The Plaintiff contends that the ALJ erred by not considering Plaintiff's combined impairments. However, the crux of Plaintiff's argument is that the ALJ failed to give appropriate weight to the opinion of Dr. Henderson, a treating physician, regarding Plaintiff's psychological limitations due to PTSD. In response, the Commissioner contends that the ALJ appropriately found good cause to reject the opinion of Dr. Henderson because it lacked support in the record as a whole. For the reasons

discussed below, the Court concludes that the ALJ properly articulated reasons for rejecting Dr. Henderson's opinion and that the ALJ's decision is supported by substantial evidence.

It is well established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[23] If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[24]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[25] Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[26]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment

---

[23] Crawford v. Comm'r of Soc. Sec., 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards, 937 F.2d at 583-584; Sabo v. Comm'r of Soc. Sec., 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[24] 20 C.F.R. § 404.1527(d)(2).

[25] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[26] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[27] However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[28]

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court determines that the ALJ properly considered and rejected the opinion of Dr. Henderson for the following reasons.

In according minimal weight to the opinions of Dr. Henderson, the ALJ found that Dr. Henderson had observed the Plaintiff on only two occasions and that he completed the October 2001 form almost five years after the period at issue in this case.

Furthermore, the ALJ found that Dr. Henderson's opinion was not consistent with the opinions of Dr. Bortnick, another treating physician. In contrast to Dr. Henderson's opinion, Dr. Bortnick concluded that Plaintiff's "interests, activities, abilities and adaptive skills are normal and he is not 'disabled' in anyway." Indeed, Dr. Bortnick recommended that working would be therapeutic for Plaintiff and that a referral for vocational rehabilitation would be suitable.

The ALJ also noted Plaintiff's activities of daily living during the relevant period of time were inconsistent with the form completed by Dr. Henderson, five years after the fact.. The ALJ properly noted  that Plaintiff was doing odd jobs around the

---

[27] 20 C.F.R. § 404.1527(d).

[28] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

13

neighborhood, repaired and installed things in his home, performed yard maintenance, occasionally went to dinner with his wife and took his son to the movies and fishing. Moreover, the ALJ pointed out that at the recent hearing Plaintiff testified that he drove himself around and that he had lost his job as a liquor store clerk only because the store had closed. This level of activity, the ALJ concluded, was inconsistent with Dr. Henderson's opinion.

Moreover, the medical record as a whole supports the ALJ's decision to afford minimal weight to Dr. Henderson's opinion. Dr. Henderson's own records disclose that Plaintiff was "pleasant, friendly, cooperative, oriented, alert, bright, and introspective with no thought disorder." (R. 381.) In addition to Dr. Henderson's own records, the opinions of several other doctors support the ALJ's finding that Plaintiff's PTSD did not severely limit his abilities. The assessments of the State Agency psychologist and Dr. Bortnick regarding Plaintiff's mental limitations were contrary to Dr. Henderson's findings.

Lastly, an earlier consultative examination by Dr. Poetter, demonstrated that Plaintiff's psychological impairment did not significantly limit his abilities. (R. 362-64.) Dr. Poettter observed that Plaintiff was oriented in all spheres and that Plaintiff's performance was inconsistent with any severe concentration deficit. Dr. Poetter observed that Plaintiff expressed himself clearly and appropriately and found no evidence of psychosis, major affective disorder nor a severe cognitive deficit. (R. 364.)

Accordingly, because Dr. Henderson's opinion was not well supported by his own clinical findings and was inconsistent with the majority of the medical evidence, discussed above, the Court concludes that the ALJ properly accorded the opinion of Dr.

14

Henderson only minimal weight. Therefore, there was no error committed by the ALJ in his decision that Plaintiff's psychological impairment did not significantly affect his ability to work and was not severe.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, on February 8, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
    The Honorable Wm. Terrell Hodges
    Senior United States District Judge

    Counsel of Record